IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

JUL 15 2026

Nathan Ochsner, Clerk of Court

| | | |
|---|---|---|
| DAVID L. WHITE, SR.,<br><br>Plaintiff,<br><br>v.<br><br>RYAN ASHTON COUTURE, a/k/a<br>R. ASHTON COUTURE, a/k/a<br>ASHTON COUTURE;<br>CENTURION FINANCIAL<br>INCORPORATED;<br>CENTURION FINANCIAL GP<br>INCORPORATED;<br>SAVAGE SQUAD CS INCORPORATED;<br>SAVAGE SQUAD INCORPORATED; and<br>TECHLINE GROUP INCORPORATED<br>d/b/a POWERED MEDIA,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 4:26CV5579<br><br>(To Be Assigned)<br><br>JURY TRIAL DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW Plaintiff David White, Sr. ("Plaintiff" or "Mr. White"), appearing *pro se*, and files this Original Complaint against Defendants Ryan Ashton Couture (a/k/a R. Ashton Couture and Ashton Couture), Centurion Financial Incorporated, Centurion Financial GP Incorporated, Savage Squad CS Incorporated, Savage Squad Incorporated, and Techline Group Incorporated d/b/a Powered Media (collectively, "Defendants"), and respectfully shows the Court the following:

### I. NATURE OF THE ACTION

1. This is a civil action for securities fraud, fraud, and related claims arising out of a scheme by which Defendant Ryan Ashton Couture induced Plaintiff to pay $100,000.00: $50,000.00 for purported shares of Techline Group Incorporated d/b/a Powered Media ("Powered Media") and $50,000.00 for purported shares of Savage Squad CS Incorporated ("Savage Squad CS"), shares that Defendant Couture represented he had the authority to sell and deliver, but which were never validly authorized, issued, recorded, or delivered to Plaintiff, and which the transaction documents themselves show were simultaneously allocated to Defendant Couture personally and to other persons and entities.

2. Defendant Couture solicited Plaintiff's investment by text message and email, transmitted shareholder agreements and share-transfer agreements, represented that the underlying companies were valuable operating businesses (Powered Media purportedly an extremely successful multi-million-dollar marketing operation projected to make $3 million to $5 million the following quarter, and Savage Squad CS purportedly worth millions of dollars), and represented that the purchased shares would be issued through the EQVISTA equity-management platform within fifteen (15) days of payment. Plaintiff received and acted upon these solicitations at his residence in Boca Raton, Florida.

3. Plaintiff paid the full $100,000.00 demanded, by credit card, in a documented series of invoiced payments in February 2024. Defendant Couture acknowledged receipt of the payments and signed documents by text message and email ("Received. Thanks"). Despite Plaintiff's full performance, no shares were ever issued to Plaintiff. In December 2025, EQVISTA confirmed to Plaintiff in writing that neither company even exists on its platform and that Plaintiff's email address is not associated with any EQVISTA account. The very transaction documents Defendant Couture transmitted reflect that the shares Plaintiff purportedly bought were simultaneously allocated to other persons and entities, including to Defendant Couture himself, and not to Plaintiff.

2

4. Plaintiff brings claims under Section 12(a)(2) and Section 15 of the Securities Act of 1933, Section 10(b) and Section 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, the Texas Securities Act, the Florida Securities and Investor Protection Act (pleaded in the alternative), and the common law, and seeks rescission, compensatory damages, exemplary damages, pre- and post-judgment interest, and costs.

## II. PARTIES

5. Plaintiff David L. White, Sr. is an individual residing at 9520 Saddlebrook Drive, Boca Raton, Palm Beach County, Florida 33496. His electronic mail address used in the transactions at issue is davidlwhitesr@yahoo.com.

6. Defendant Ryan Ashton Couture (a/k/a "R. Ashton Couture" and "Ashton Couture") is an individual residing at 13703 Glendon Drive, Richmond, Fort Bend County, Texas 77407, who at all relevant times held himself out as the Chief Executive Officer of Centurion Financial Incorporated and signed the transaction documents as "Chairman of the Board" of both Savage Squad CS Incorporated and Techline Group Incorporated d/b/a Powered Media. He may be served at his residence, at 2800 N. Post Oak Boulevard, Suite 5910, Houston, Texas 77056, at 5921 Dolores Street, Houston, Texas 77057, or wherever he may be found. Plaintiff is informed that Defendant Couture has evaded or manipulated service of process in other proceedings, and Plaintiff will, if necessary, move for substituted service by electronic mail under Federal Rule of Civil Procedure 4(e)(1) and Texas Rule of Civil Procedure 106(b), as courts have previously authorized as to this Defendant.

7. Defendant Centurion Financial Incorporated ("Centurion") is a business entity operating in Houston, Harris County, Texas, with a principal place of business at 2800 N. Post Oak Boulevard, Suite 5910, Houston, Texas 77056. Defendant Couture used Centurion's name, branding, electronic mail account (ceo@centurionfinancial.com), and corporate letterhead to solicit and transmit the offering materials at issue. It may be served through its registered agent or principal place of business.

8. Defendant Centurion Financial GP Incorporated ("Centurion GP") is a corporation operating in Houston, Harris County, Texas, with an address at 2800 Post Oak Boulevard, Suite 5905, Houston, Texas 77056. The Savage Squad CS Shareholders Agreement transmitted to Plaintiff reflects that 100 of the 1,000 Savage Squad CS shares, part of the very share pool Plaintiff was paying to acquire, were allocated to Centurion GP. Centurion GP is also the plaintiff in a related action against Mr. White in this District, Centurion Financial GP, Inc. v. White, No. 4:26-cv-00400 (S.D. Tex.). It may be served through its registered agent or principal place of business.

9. Defendant Savage Squad CS Incorporated ("Savage Squad CS") is a corporation operating in Houston, Harris County, Texas, with addresses at 5921 Dolores Street, Houston, Texas 77057, and 2800 N. Post Oak Boulevard, Suite 5910, Houston, Texas 77056. It is the issuer of the shares Plaintiff purportedly purchased under the Savage Squad CS Share Transfer Agreement. It may be served through its registered agent.

10. Defendant Savage Squad Incorporated is a corporation operating in Houston, Harris County, Texas, identified in the Savage Squad CS Share Transfer Agreement as the "Transferor" of the shares purportedly sold to Plaintiff. It may be served through its registered agent.

11. Defendant Techline Group Incorporated d/b/a Powered Media ("Techline/Powered Media") is a corporation that, at relevant times, listed a principal place of business at 2800 N. Post Oak Boulevard, Suite 5910, Houston, Texas 77056, and is associated with corporate records in the State of Colorado. It is the issuer of the shares Plaintiff purportedly purchased under the Powered Media Share Transfer Agreement. Colorado Secretary of State records identify persons other than Defendant Couture as its filers and officers. It may be served through its registered agent.

12. At all relevant times, Defendant Couture dominated, controlled, and directed each of the entity Defendants and used their names, letterhead, billing systems, and merchant and

bank accounts as instrumentalities of the scheme alleged herein. The entity Defendants received and retained Plaintiff's funds. They are named as Defendants because they are statutory sellers and/or recipients of the funds and are necessary parties for complete rescission and restitution, not because Plaintiff contends that every person associated with them participated in the fraud.

### III. JURISDICTION AND VENUE

13. This Court has federal-question subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the laws of the United States, including Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77l(a)(2), and Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

14. This Court has jurisdiction over the federal securities claims pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

15. This Court also has diversity jurisdiction under 28 U.S.C. § 1332(a) because Plaintiff is a citizen of Florida, each Defendant is a citizen of a State other than Florida, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

16. This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy and arise from the same common nucleus of operative facts.

17. Venue is proper in this District under 28 U.S.C. § 1391(b), Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because Defendants reside in this District, a substantial part of the events and omissions giving rise to the claims occurred in this District, and the offers, sales, communications, and acts and transactions constituting the violations occurred in this District.

18. In connection with the acts and omissions alleged, Defendants directly or indirectly used the means and instrumentalities of interstate commerce, the mails, and electronic communications, including text messages, electronic mail, and credit-card payment networks.

## IV. FACTUAL ALLEGATIONS

### A. The Parties' Prior Relationship

19. In or around October or November of 2023, approximately three to four months before the transactions at issue, Plaintiff was introduced to Defendant Couture by a family member. Plaintiff had never met, spoken with, or otherwise had any contact with Defendant Couture before that introduction. Defendant Couture thereafter provided Plaintiff with chief-financial-officer ("CFO")-type financial services and, through that role, befriended Plaintiff, cultivated Plaintiff's trust and confidence, and obtained detailed knowledge of Plaintiff's financial circumstances, including the credit-card accounts Plaintiff held and Plaintiff's desire to invest available funds in a sound opportunity.

20. Having learned through his position of trust that Plaintiff wished to invest, Defendant Couture targeted Plaintiff with the purported share offerings described below.

21. Defendant Couture held himself out as a sophisticated financial executive, identifying himself as Chief Executive Officer of Centurion Financial Incorporated and using the electronic mail address ceo@centurionfinancial.com and Centurion corporate letterhead.

### B. The Solicitation (January 2024)

22. On or about January 30, 2024, Defendant Couture initiated contact with Plaintiff by text message from a number saved by Plaintiff under a contact label, writing: "Hey it's Ashton, lmk when you have a minute to discuss." The parties then spoke about an investment opportunity.

23. On or about January 31, 2024, Defendant Couture texted Plaintiff: "Sent you all the docs, making sure you got them all. I know it's a lot at once so if you want to go over them

with me just lmk and we can setup some time."

24. On January 31, 2024, at approximately 12:48 p.m., Defendant Couture sent Plaintiff an email from ceo@centurionfinancial.com on Centurion Financial letterhead, signed "R. Ashton Couture, Chief Executive Officer, Centurion Financial Incorporated," stating: "David, As we discussed last nite, here are all the relevant docs for the two companies, along with the needed signed docs for the funding agreement and LOI moving forward. Need your signature on the LOI, Funding Agreement and both Share Transfer Agreements. The Shareholder Agreements are only for your records as your copy. Can setup a call if you need to go over anything or to process the transfer."

25. The January 31, 2024 email attached, among other things: (a) a file labeled "Powered Media.zip"; (b) a file labeled "Savage Squad CS.zip"; (c) "Funding Agreement - David White.pdf"; and (d) "Letter of Intent.pdf." These materials constituted the offering documents for the purported securities.

## C. The Misrepresentations Regarding Value, Authority, and Delivery

26. In connection with the offer and sale, Defendant Couture represented to Plaintiff, among other things: (a) that Powered Media was a valuable, extremely successful operating company engaged in multi-million-dollar marketing work, and that it was projected to make approximately $3 million to $5 million over the following quarter based on a marketing proposal that had been approved by a local dealership; (b) that Savage Squad CS was a valuable company worth millions of dollars because it had begun teaching officers how to repair credit, had built a large team around the owner of the company, had strong existing demand for its services, and had just shot a professionally produced television commercial that had generated substantial additional demand; (c) that Defendant Couture had the authority to sell and transfer shares of both companies to Plaintiff; (d) that Plaintiff's purchased shares would be issued and recorded through the EQVISTA equity-management platform within fifteen (15) days of finalized purchase; and (e) that Plaintiff would thereby become a recorded

7

shareholder owning an equity interest in each company.

27. The Powered Media Share Transfer Agreement transmitted to Plaintiff identified Ashton Couture personally as the "Transferor" and David White as the "Transferee," set the transfer price at $50,000, and provided that "[a]ll shares are hosted on EQVISTA and shall be issued within 15 days of finalized purchase." The corresponding Powered Media Shareholders Agreement bore a stated date of July 20, 2023, and was signed by Ashton Couture as "Chairman of the Board, Techline Group Incorporated d/b/a Powered Media." The July 20, 2023 date is months before Plaintiff had even met Defendant Couture; Plaintiff signed nothing and agreed to nothing on that date. Both purported share sales were in fact solicited, transmitted, and executed together in the January-February 2024 period, when Defendant Couture emailed the transaction documents to Plaintiff (January 31, 2024) and Plaintiff paid the full $100,000.00 purchase price (February 8-13, 2024). The pre-relationship date appearing on the Powered Media documents is accordingly further indicia that the documents were pre-fabricated, recycled, or backdated rather than the product of any genuine, contemporaneous corporate share issuance to Plaintiff.

28. The Savage Squad CS Share Transfer Agreement transmitted to Plaintiff identified Savage Squad Incorporated as the "Transferor" and David White as the "Transferee," set the transfer price at $50,000, transferred 50 Class A shares constituting a represented 5% ownership interest, and likewise provided that "[a]ll shares are hosted on EQVISTA and shall be issued within 15 days of finalized purchase." The corresponding Savage Squad CS Shareholders Agreement was dated January 30, 2024, and was signed by Ashton Couture as "Chairman of the Board, Savage Squad CS Incorporated."

29. The offering documents bear indicia of fabrication. The Savage Squad CS agreement documents, though purportedly issued by and concerning Savage Squad CS Incorporated, bear the letterhead, header address block, and "Powered.media" footer branding of Techline Group Incorporated d/b/a Powered Media, demonstrating that the Savage Squad

8

CS documents were generated from the Powered Media template rather than by any genuine corporate process of Savage Squad CS.

30. Defendant Couture signed the operative documents for both companies as "Chairman of the Board" of Techline Group Incorporated d/b/a Powered Media (stated document date of July 20, 2023) and of Savage Squad CS Incorporated (stated document date of January 30, 2024). On information and belief, Defendant Couture held no such office in either company; Colorado Secretary of State records for Techline Group Incorporated identify other persons as its officers and filers.

31. Each of the foregoing representations was material. Plaintiff justifiably relied on them in deciding to pay for, and in paying for, the purported shares.

**D. Plaintiff's Payments (February 2024)**

32. In reliance on Defendant Couture's representations, Plaintiff paid Defendants the full $100,000.00 purchase price, by credit card, through invoices issued by Defendants' "Savage Squad" billing system (billing@savagesquad.com; 5921 Dolores Street, Houston, Texas 77057). Plaintiff's payments, each documented by a merchant receipt, include: (a) $10,000.00 on February 8, 2024 (Invoice 030186, Visa ending 2178); (b) $10,000.00 on February 8, 2024 (Invoice 030188, American Express ending 2005); (c) $30,000.00 on February 8, 2024 (Invoice 030188, American Express ending 4004); (d) $20,000.00 on February 8, 2024 (Invoice 030188, Visa ending 9046); (e) $10,000.00 on February 12, 2024 (Invoice 030187, Visa ending 5684); and (f) $20,000.00 on February 13, 2024 (Invoice 030187, Visa ending 2939). These payments correspond to the $50,000.00 purchase price for the Powered Media shares and the $50,000.00 purchase price for the Savage Squad CS shares.

33. Defendant Couture actively directed the manner of payment, and he was able to do so precisely because he was then serving Plaintiff in a CFO-type financial-advisory capacity and, through that position of trust, knew which credit-card accounts Plaintiff held and the available credit balances on each of those accounts. By text message, he instructed Plaintiff

9

regarding which credit-card accounts to use, writing, among other things, of using "the PenFed card to pay the remaining invoice," and acknowledging Plaintiff's use of a "Chase Premier" card. In a further text message, Defendant Couture wrote: "Paid one invoice in full, the other partial. Need to get the chase primer card going or the funds from the other car sale in Houston to fund the rest. I'll print the agreements from the office . . . ."

34. On February 1, 2024, Defendant Couture confirmed by text message: "Docs sent" and "Invoices sent." On or about February 10, 2024, Defendant Couture transmitted to Plaintiff a photograph of executed agreements.

35. On February 12, 2024, at approximately 8:39 p.m., Plaintiff emailed Defendant Couture at ceo@centurionfinancial.com, stating: "Signed docs attached. 10k of the remaining 30k paid." At approximately 9:52 p.m. that same day, Defendant Couture replied by email: "Received. Thanks," acknowledging receipt of the signed documents and Plaintiff's payment.

**E. No Shares Were Ever Issued or Delivered**

36. Although Plaintiff fully performed by paying the sums demanded, Defendants never issued, recorded, or delivered any shares to Plaintiff. No share certificate was ever delivered, and no valid entry reflecting Plaintiff as an owner was ever made in the companies' books and records.

37. The EQVISTA equity-management platform, the very system on which Defendant Couture represented the shares would be hosted and issued, reflects that no shares were issued to Plaintiff in either company. The fifteen-day issuance deadline came and went with no issuance. In December 2025, a representative of EQVISTA confirmed to Plaintiff in writing that EQVISTA has no record of Techline Group Incorporated d/b/a Powered Media or of Savage Squad CS Incorporated in its system at all, and that Plaintiff's email address is not associated with any EQVISTA account. The companies whose shares Plaintiff paid $100,000.00 to acquire were never even onboarded to the platform on which the shares were promised to be issued.

10

38. The shareholder agreements that Defendant Couture himself transmitted to Plaintiff demonstrate that the shares Plaintiff purportedly bought were never available to be sold to him. The Savage Squad CS Shareholders Agreement (dated January 30, 2024) reflects, in its Schedule A, that the company's 1,000 Class A shares were transferred to Rachel Klemenz (400 shares), Savage Squad Incorporated (500 shares), and Centurion Financial GP Incorporated (100 shares), with zero shares allocated to Plaintiff. The Powered Media Shareholders Agreement (bearing the stated date of July 20, 2023) reflects, in its Schedule A, that the company's 1,000,000 Class A shares were transferred to Ashton Couture, again, with zero shares allocated to Plaintiff.

39. To the extent any Defendant contends that the share-transfer agreements were incompletely executed or that signature or date lines were left blank, each agreement provides, in its Section 5.15, that it "is binding on both Parties by virtue of the conduct of both parties and in spite of any defect or error in the formality of its execution." Defendants manifested assent by preparing and transmitting the agreements, invoicing Plaintiff for the exact purchase price, accepting and retaining Plaintiff's $100,000.00, transmitting a photograph of executed agreements on or about February 10, 2024, and acknowledging receipt of Plaintiff's signed documents and payments ("Received. Thanks"). In any event, any incompleteness of execution supports, rather than defeats, Plaintiff's fraud claims: Defendants took Plaintiff's money for securities they never intended to validly document, issue, or deliver.

**F. Defendant Couture Lacked Authority and Concealed Material Facts**

40. On information and belief, Defendant Couture had no valid issuer-side authority to sell or transfer the shares he purported to sell to Plaintiff. He was not duly elected or appointed to an office with such authority, no board, manager, or member action authorized the sales, and no valid corporate or LLC action stood behind the purported transfers.

41. Defendant Couture failed to disclose, and affirmatively concealed, material facts including: (a) that the shares were not authorized, issuable, or available for sale to Plaintiff; (b)

11

that the same shares were being or had been allocated to other persons and entities; (c) that the represented valuations were false or had no reasonable basis; and (d) that the entities and agreements were structured to create the appearance, but not the substance, of a legitimate equity sale.

42. On information and belief, one or more of the entity Defendants were recently created or restructured shortly before the solicitation, and the offering documents were generated to lend a false appearance of legitimacy to the transaction.

**G. Plaintiff's Discovery of the Fraud**

43. After Plaintiff paid, Defendant Couture became evasive: telephone calls went unreturned and requests for transparency about the companies and Plaintiff's shares went unanswered. Concerned, Plaintiff traveled to Texas to confront Defendant Couture in person. Defendant Couture then told Plaintiff that the companies were failing and asked Plaintiff to provide consulting services to help Defendant Couture's various companies succeed.

44. It was only through and during that consulting engagement, and Plaintiff's subsequent investigation, that Plaintiff progressively discovered that the share offerings had been a charade, a fraud and a scheme, including that no shares had been or would ever be issued to him, that the transaction documents allocated the shares to persons other than Plaintiff, and (through Plaintiff's direct written communications with EQVISTA in December 2025) that the companies did not even exist on the platform on which issuance had been promised. Upon discovering the fraud, Plaintiff resigned from the consulting engagement.

45. Plaintiff did not discover, and in the exercise of reasonable diligence could not have discovered, the facts constituting the fraud and the untrue statements and omissions until late 2025. This action, filed in July 2026, is accordingly timely under every applicable limitations provision: (a) Section 13 of the Securities Act, 15 U.S.C. § 77m (one year from discovery; outside limit of three years from the sale). Both sales in fact occurred in January-February 2024, when the securities were offered and sold to Plaintiff, the transaction documents were

transmitted (January 31, 2024), and the purchase price was paid (February 8-13, 2024), making the three-year outside limit run no earlier than January-February 2027. Even under the earliest date appearing on any transaction document, the July 20, 2023 stated date on the Powered Media papers, a date months before Plaintiff had met any Defendant and on which Plaintiff signed and agreed to nothing, this action is timely if received by the Clerk on or before July 20, 2026; (b) 28 U.S.C. § 1658(b) (Exchange Act § 10(b)/Rule 10b-5: two years from discovery, five years from the violation); (c) Tex. Gov't Code § 4008.062 (Texas Securities Act: three years from discovery, five-year outside limit); (d) Tex. Civ. Prac. & Rem. Code § 16.004(a)(4) (fraud: four years, with the discovery rule); (e) Tex. Civ. Prac. & Rem. Code § 16.004 and § 16.051 (breach of contract and conversion: four and two/four years respectively); and (f) Fla. Stat. § 95.11 (Florida securities and fraud claims pleaded in the alternative: two years from discovery under § 517.211 claims, and four years for common-law fraud, each with the delayed-discovery doctrine). Plaintiff further invokes the discovery rule, equitable tolling, and the doctrine of fraudulent concealment: Defendant Couture's continued assurances, his post-sale explanation that the companies were merely "failing," and his enlistment of Plaintiff as a consultant actively concealed the true facts and lulled Plaintiff into inaction.

## H. Pattern of Conduct and Consciousness of Guilt

46. On information and belief, the conduct directed at Plaintiff was part of a broader pattern. Defendant Couture has operated through a succession of affiliated entities, including Centurion Financial, Savage Squad Incorporated, Savage Squad CS Incorporated, Savage Squad Properties LLC, German Group Inc., and Techline Group/Powered Media, that have been the subject of numerous civil proceedings across multiple jurisdictions, including merchant cash-advance defaults and related disputes, reflecting a recurring practice of using corporate names and documents to obtain money under false pretenses. Those proceedings include, among others, a suit in Fort Bend County, Texas (Cause No. 26-DCV-339191) seeking approximately $247,648 from Defendant Couture and an affiliated entity, and a suit in

13

Miami-Dade County, Florida arising from merchant cash-advance funds obtained in the name of another individual.

47. On information and belief, Defendant Couture has also interfered with and manipulated service of judicial process. In a Florida proceeding in January 2026, an individual matching Defendant Couture's description accepted service at Defendants' 2800 Post Oak Boulevard office while identifying himself under an alias, "Luke Johnson." Such conduct evidences consciousness of guilt and supports Plaintiff's anticipated request, if needed, for substituted service by electronic mail.

48. All conditions precedent to Plaintiff's recovery have been performed, have occurred, or have been waived.

## V. CAUSES OF ACTION

### COUNT I

### Violation of Section 12(a)(2) of the Securities Act of 1933 (15 U.S.C. § 77l(a)(2))

### (Rescission)

*(Against All Defendants)*

49. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

50. The interests sold to Plaintiff, shares of stock and equity interests in Powered Media and Savage Squad CS, are "securities" within the meaning of the Securities Act of 1933.

51. Defendants offered and sold these securities to Plaintiff by means of oral communications and written offering materials (including the share-transfer agreements, shareholder agreements, letter of intent, and funding agreement) transmitted by electronic mail and text message, using the means and instruments of interstate commerce and the mails.

52. Those communications included untrue statements of material fact and omitted to state material facts necessary to make the statements made, in light of the circumstances under

14

which they were made, not misleading, including the misrepresentations and omissions concerning the valuations of the companies, Defendant Couture's authority to sell the shares, the availability and issuability of the shares, and the promised issuance of the shares through EQVISTA.

53. Defendants were sellers and/or solicited the purchase, motivated at least in part by their own financial interest, and are statutory sellers within the meaning of Section 12(a)(2).

54. Plaintiff did not know, and in the exercise of reasonable diligence could not have known, of the untruths and omissions at the time of the sale.

55. Plaintiff still holds nothing of value and tenders rescission. Plaintiff is entitled to recover the consideration paid for the securities, with interest, less any income received, upon tender of the securities, or to recover damages if he no longer owns the securities, pursuant to 15 U.S.C. § 77l(a)(2).

## COUNT II

**Violation of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and SEC Rule 10b-5 (17 C.F.R. § 240.10b-5) (Securities Fraud)**

*(Against All Defendants)*

56. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

57. In connection with the purchase and sale of the securities, Defendants, directly and indirectly, by use of the means and instrumentalities of interstate commerce, the mails, and electronic communications: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon Plaintiff, in violation of Section 10(b) and Rule 10b-5.

15

58. The material misrepresentations and omissions include those set forth above concerning the companies' valuations, Defendant Couture's authority to sell shares, the availability and issuability of the shares, and the promised issuance of the shares through EQVISTA within fifteen days.

59. Defendants acted with scienter, that is, with intent to deceive, manipulate, or defraud, or with severe recklessness. Defendant Couture knew, or was severely reckless in not knowing, that he lacked authority to sell the shares, that the same shares were allocated to others, that the valuations were false or baseless, and that the shares would not be issued to Plaintiff.

60. Plaintiff justifiably and reasonably relied on Defendants' misrepresentations and on the integrity of the transaction, and that reliance caused Plaintiff's payment of $100,000.00.

61. Defendants' conduct was the direct, proximate, and producing cause of Plaintiff's economic loss, which became manifest when no shares were issued or delivered and Plaintiff's funds were not returned.

## COUNT III

**Violations of the Texas Securities Act (Tex. Gov't Code § 4001.001 et seq.)**

*(Against All Defendants)*

62. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

63. The interests sold to Plaintiff are "securities" as broadly defined by the Texas Securities Act, Tex. Gov't Code § 4001.068, which includes shares, stock, subscriptions, certificates representing an interest in a company, and investment contracts, and which may exist even in the absence of a written certificate.

64. Pursuant to Tex. Gov't Code § 4008.052, a person who offers or sells a security by means of an untrue statement of a material fact or an omission to state a material fact necessary

16

to make the statements made not misleading is liable to the person buying the security. Defendants offered and sold the securities to Plaintiff by means of the untrue statements and omissions alleged above.

65. Defendants further engaged in fraud and fraudulent practices in connection with the sale of securities, including misrepresentations of material fact, promises about the future made without an honest, good-faith intention to perform, intentional failures to disclose material facts, and a scheme or artifice in connection with the sale of securities.

66. Plaintiff is entitled to rescission and to recover the consideration paid, plus interest, costs, and reasonable attorney's fees, or damages, as provided by the Texas Securities Act, and the control persons and aiders are jointly and severally liable as provided by Tex. Gov't Code § 4008.053.

## COUNT IV

### Common-Law Fraud

*(Against All Defendants)*

67. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

68. Defendants made material representations to Plaintiff, as set forth above, concerning the companies' valuations, Defendant Couture's authority to sell shares, the availability and issuability of the shares, and the promised issuance of shares through EQVISTA.

69. The representations were false. Defendants knew the representations were false when made, or made them recklessly, as positive assertions, and without knowledge of their truth.

70. Defendants made the representations with the intent that Plaintiff act upon them by paying for the purported shares. Plaintiff justifiably relied on the representations.

17

71. Plaintiff's reliance caused him injury, including the loss of $100,000.00, together with interest, finance charges, and consequential damages.

## COUNT V

### Fraudulent Inducement

*(Against All Defendants)*

72. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

73. Defendants fraudulently induced Plaintiff to enter into the share-transfer agreements and to make the payments at issue by means of the material misrepresentations and omissions alleged above, made with no intention of performing as represented.

74. Defendant Couture's promises, that the shares would be issued and recorded through EQVISTA within fifteen days and that Plaintiff would become a recorded shareholder, were promises of future performance made with no present intent to perform, as evidenced by the fact that the shares were simultaneously allocated to others and were never issued to Plaintiff.

75. But for Defendants' fraudulent inducement, Plaintiff would not have signed the agreements or made the payments. Plaintiff justifiably relied to his detriment and suffered damages.

## COUNT VI

### Breach of Contract

*(Against Defendants Couture, Savage Squad CS, Savage Squad Incorporated, and Techline/Powered Media)*

76. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

18

77. The Powered Media Share Transfer Agreement and the Savage Squad CS Share Transfer Agreement are valid, enforceable contracts. Plaintiff performed his obligations under each by tendering the agreed consideration.

78. Defendants materially breached the agreements by failing to transfer, issue, record, or deliver the shares to Plaintiff within fifteen (15) days as required, or at all, despite Plaintiff's full payment.

79. As a direct and proximate result of Defendants' breaches, Plaintiff suffered damages in the amount of the consideration paid, plus consequential damages, and is entitled to recover those damages together with reasonable attorney's fees and costs as permitted by law, including Tex. Civ. Prac. & Rem. Code § 38.001.

## COUNT VII

### Conversion

*(Against All Defendants)*

80. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

81. Plaintiff paid specific, identifiable funds of $100,000.00, traceable to specific invoices and credit-card transactions, for a specific purpose: the purchase and issuance of shares.

82. Defendants wrongfully exercised dominion and control over Plaintiff's funds in a manner inconsistent with Plaintiff's rights, by accepting and retaining the funds while failing to deliver the shares or return the money, and by applying the funds to their own use.

83. Plaintiff demanded the return of the funds or delivery of the shares, and Defendants refused. Plaintiff was damaged by the conversion in the amount of the funds converted.

## COUNT VIII

### Unjust Enrichment

19

*(Against All Defendants, Pleaded in the Alternative)*

84. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

85. In the alternative, to the extent any payment is not governed by an enforceable contract, Defendants were unjustly enriched at Plaintiff's expense by obtaining and retaining Plaintiff's funds through fraud, duress, or the taking of an undue advantage, while providing nothing of value in return.

86. Equity and good conscience require that Defendants make restitution to Plaintiff of all sums by which they were unjustly enriched, together with interest.

## COUNT IX

**Control-Person Liability Under Section 15 of the Securities Act (15 U.S.C. § 77o) and Section 20(a) of the Exchange Act (15 U.S.C. § 78t(a))**

*(Against Defendant Ryan Ashton Couture)*

87. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

88. The entity Defendants are primarily liable for the violations of Section 12(a)(2) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 alleged above.

89. At all relevant times, Defendant Couture possessed, directly or indirectly, the power to direct or cause the direction of the management and policies of each entity Defendant. He created, signed, and transmitted the offering documents; controlled the entities' communications, letterhead, email accounts, billing systems, and receipt of funds; and signed as "Chairman of the Board" and "Chief Executive Officer" of the entities.

90. Defendant Couture was a culpable participant in the violations and did not act in good faith. He is therefore jointly and severally liable as a control person under Section 15 of the Securities Act, 15 U.S.C. § 77o, and Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a),

20

to the same extent as the entity Defendants.

## COUNT X

### Violations of the Florida Securities and Investor Protection Act (Fla. Stat. §§ 517.301, 517.211) (Pleaded in the Alternative)

*(Against All Defendants)*

91. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

92. In the alternative, to the extent Florida law applies because the offers and sales were directed to and received by Plaintiff in Florida, the interests sold to Plaintiff are securities under Fla. Stat. § 517.021, and Defendants, in connection with the offer and sale of those securities, directly and indirectly employed devices, schemes, and artifices to defraud, obtained money by means of untrue statements of material fact and omissions of material fact, and engaged in transactions, practices, and a course of business which operated as a fraud upon Plaintiff, in violation of Fla. Stat. § 517.301.

93. Pursuant to Fla. Stat. § 517.211, Plaintiff is entitled to rescission and recovery of the consideration paid, plus interest, or damages, together with reasonable attorney's fees in the event Plaintiff retains counsel.

## VI. EXEMPLARY DAMAGES AND JOINT AND SEVERAL LIABILITY

94. Defendants' conduct was fraudulent and malicious and was committed with actual awareness of its wrongful and deceptive character. Plaintiff is therefore entitled to recover exemplary (punitive) damages under Tex. Civ. Prac. & Rem. Code § 41.003 and applicable law.

95. Because Defendants acted in concert and through a common scheme, and because Defendant Couture controlled and directed the entity Defendants, Defendants are jointly and severally liable for Plaintiff's damages.

## VII. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff David White, Sr. respectfully requests that the Court enter judgment against Defendants, jointly and severally, and grant the following relief:

a. Rescission of the share-transfer transactions and restitution of all consideration paid by Plaintiff, in the amount of $100,000.00, together with interest, pursuant to 15 U.S.C. § 77l(a)(2), the Texas Securities Act, and (in the alternative) Fla. Stat. § 517.211;

b. Compensatory and actual damages in an amount to be proven at trial, but not less than $100,000.00 in direct out-of-pocket loss, together with all consequential damages proximately caused by Defendants' conduct, including credit-card interest and finance charges Plaintiff has incurred and continues to incur on the accounts used to fund the purchases;

c. Exemplary (punitive) damages in the maximum amount permitted by Tex. Civ. Prac. & Rem. Code §§ 41.003 and 41.008 and other applicable law, in an amount not less than two times Plaintiff's economic damages;

d. Pre-judgment and post-judgment interest at the maximum lawful rates;

e. Reasonable and necessary attorney's fees and litigation expenses as permitted by law, including under the Texas Securities Act and Tex. Civ. Prac. & Rem. Code § 38.001, in the event Plaintiff retains counsel;

f. Costs of court;

g. Disgorgement of all amounts by which Defendants were unjustly enriched; and

h. Such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

## VIII. DEMAND FOR JURY TRIAL

96. Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution, Plaintiff demands a trial by jury on all issues so

triable.

Respectfully submitted,

7/14/26

**David L. White, Sr.**
Plaintiff, Pro Se
9520 Saddlebrook Drive
Boca Raton, Florida 33496
954-650-1150
davidlwhitesr@yahoo.com